## In re DUNSEATH & SON CO. et al.

### (District Court, W. D. Pennsylvania. March 22, 1909.)

### No. 5.

1. BANKRUPTCY (§ 115*)—RECEIVERS—EXTRATERRITORIAL AUTHORITY.

A receiver in bankruptcy appointed by the District Court of one district cannot maintain an action in the District Court of another district to recover assets in the hands of strangers, nor can a court of the latter district stay the officers of the state court and order them to surrender assets of the bankrupt within the district to the receiver appointed in the foreign district, that the assets may be preserved until a trustee is elected.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 115.*]

2. BANKRUPTCY (§ 114*)—FEDERAL COURTS—ANCILLARY JURISDICTION—RECEIVERS.

Under Bankr. Act July 1, 1898, c. 541, § 1, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), giving federal courts bankruptcy jurisdiction to be exercised within their territorial limits, to administer estates in all their details, and providing that nothing contained in the enumerated powers in section 2 should deprive a court of bankruptcy of any power it would

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

possess if the specific powers had not been therein enumerated, a federal District Court in a district other than that in which bankruptcy proceedings are pending has jurisdiction to appoint an ancillary receiver to take possession of property in such district belonging to the bankrupt pending adjudication, in order to preserve the same.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 114.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

John W. Dunkle and Carrell & Henkle, for petitioners.
J. M. Shields and A. B. Angney, for creditors.

YOUNG, District Judge. This case is here upon the petition of the American Manufacturing Company, a corporation of the state of West Virginia, which recites that it is a creditor and a person interested in the estate of the above bankrupts; that Robert Dunseath, individually and the firm of Dunseath & Son Company, on February 9, 1909, filed a petition in the clerk's office of the District Court for the Southern district of New York, praying for the adjudication in bankruptcy of Robert Dunseath, individually and the partnership firm of Dunseath & Son Company; that the bankrupts have been engaged in business in the city of New York, in the Southern district of New York; that on February 9, 1909, the United States District Court for the Southern district of New York appointed James O. Tryon receiver, who has duly qualified and given bond as required by the court; that the partnership of Dunseath & Son Company consists of Robert Dunseath, Alfred E. Dunseath, an infant, and George Harvey; that service of the subpoena has not been had on Harvey, and that time will be required to serve him by publication; that pending the appointment of a referee the adjudication and election of a trustee several months will probably elapse; that property consisting of machinery and supplies used in the construction of bridges is located near the town of Donora, in this district; that the assets within this district can now be sold at higher prices than later because of a demand for such material in the construction of a new bridge at Donora; that the expense of caring for the assets pending the election of a trustee could be saved by the appointment of a receiver and the sale of the assets; and that an ancillary receiver should be appointed. The petition filed by James O. Tryon, the receiver appointed by the District Court for the Southern district of New York, was filed with the above-recited petition of the American Manufacturing Company, which recites the same matters, and, in addition thereto, that the assets of the bankrupts located in this district are in the custody of the sheriffs of Washington and Westmoreland counties, both in this district, by virtue of sundry writs of foreign attachments obtained within four months of the commencement of the bankruptcy proceedings, and that said sheriffs refused to deliver the property seized thereunder to the petitioner as receiver, and prays for an order directing these officers to turn over the assets in their custody to the receiver. Service of notice of these applications was accepted by counsel for the attaching creditors.

Two questions are thus presented for our consideration: First. Can

the District Court of this district stay the officers of the state court, and order them to surrender the assets of the bankrupts in this district to the receiver appointed in the Southern district of New York, so that they may be preserved until the trustee is elected? Second. Has a District Court of the United States jurisdiction to appoint an ancillary receiver pending the adjudication of the bankrupts in another district in aid of the proceedings in bankruptcy?

The first question must be answered in the negative. The weight of authority is that the receiver appointed by the District Court of one district cannot maintain an action in the District Court of another district to recover the assets in the hands of strangers. The extra-territorial power of a receiver was carefully considered in the case of Clark v. Booth, 17 How. 327, 15 L. Ed. 164, and it was there decided that the receiver possessed no such power. This case was referred to in the case of Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, where Mr. Justice Peckham, in commenting on the case of Clark v. Booth, said:

"We do not think anything has been said or decided in this court which destroys or limits the controlling authority of that case."

In our own circuit Judge McPherson, sitting in the Eastern district of Pennsylvania, in the case of In re National Mercantile Agency (D. C.) 12 Am. Bankr. Rep. 189, 128 Fed. 639, decided that a receiver in bankruptcy under an order to collect and take possession of all the assets of an alleged bankrupt is not authorized to bring suits in a district other than the one in which he was appointed, and shows that this position is sustained by the highest authority. We must therefore conclude that the receiver in the case at bar cannot maintain a suit in this district. Under the prevailing authorities he certainly cannot by a summary proceeding such as is brought in this case either restrain the state officers or recover the assets of the bankrupts from the hands of strangers. This disposes of the first question.

The second question, viz., Has the District Court of this district jurisdiction to appoint an ancillary receiver in aid of the District Court of the United States for the Southern district of New York, which has taken jurisdiction of the bankrupts' estate? is one of very much more difficulty. We are confronted with these facts. A receiver has been appointed to take possession of and preserve the assets of the alleged bankrupts until a trustee can be appointed. Almost all the assets of the bankrupt are within this district. An adjudication cannot be had and a trustee cannot be elected for a long time because of the impossibility of serving one member of the bankrupt firm. The assets consist of machinery and bridge supplies for which there is now a ready market at good prices because of the building of a bridge at the place where the assets are located. These assets will not only be less salable in the future, but the expense of preserving them by the state officers in custody of them by writs of attachment will be large. If not interfered with, the state officers, pending the appointment of a trustee, who can bring a plenary action to recover them, may proceed upon their writs and the title to the assets pass to third parties, and the amount realized on a forced sale be but a moiety of their

real value. Under these facts, if there is any authority in this court to appoint an ancillary receiver, it should be done. This question has never been decided, so far as we have been able to find, by any federal appellate court, and the decisions of the federal District Courts are diverse.

We believe the correct principle to be stated in the case of Lathrop, Assignee, v. Drake, 91 U. S. 516, 23 L. Ed. 414, where Mr. Justice Bradley, in deciding a case arising under the bankruptcy act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), says:

"But the exclusion of other District Courts from jurisdiction over these proceedings does not prevent them from exercising jurisdiction in matters growing out of or connected with that identical bankruptcy, so far as it does not trench upon or conflict with the jurisdiction of the court in which the case is pending. Proceedings ancillary to and in aid of the proceedings in bankruptcy may be necessary in other districts where the principle court cannot exercise jurisdiction, and it may be necessary for the assignee to institute suits in other districts for the recovery of assets of the bankrupt. That the courts of such other districts may exercise jurisdiction in such cases would seem to be the necessary result of the general jurisdiction conferred upon them, and is in harmony with the design and scope of the act. The state courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts; and it is not to be presumed that embarrassments would be encountered in those courts in the way of a prompt and fair administration of justice. But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the states in which it is possible that embarrassments might arise. The question has been quite fully and satisfactorily discussed by a member of this court in the First circuit in the case of Sherman v. Bingham, 7 N. B. R. 490; and we concur in the opinion there expressed, that the several District Courts have jurisdiction of suits brought by assignees appointed by other District Courts in cases of bankruptcy."

That learned judge, without further elaborating this doctrine, cites the opinion of Mr. Justice Clifford in the case of Sherman v. Bingham, Fed. Cas. No. 12,762, where is found a most learned, exhaustive, and persuasive discussion of the power of the federal courts to uniformly and effectively administer the national bankruptcy act. The reasons for this decision are equally applicable to the present bankruptcy act. The bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) throughout gives to the federal courts jurisdiction to be exercised "within their territorial limits" to administer the estates of bankrupts in all their details. Section 2 enumerates their powers, and closes with the provision that:

"Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

We have in this section, then, not only powers enumerated and authority to take jurisdiction conferred; but, lest any matter necessary to the complete administering of the estate should have been overlooked in this section, we have the provision reaffirming to those courts all the powers they would possess as a court of bankruptcy commensurate with the purposes of a system of administering insolvent estates. These federal courts have apart from and undisturbed by this act their jurisdiction as ordinary courts of suits at law and in equity as defined by statute and decision. This jurisdiction of the

District Court has been well defined in Lathrop, Assignee, v. Drake, supra, where the learned justice says:

"Of this there are two distinct classes: First, jurisdiction as a court of bankruptcy over the proceedings in bankruptcy initiated by the petition and ending in the distribution of assets amongst the creditors and the discharge or refusal of a discharge of the bankrupt; secondly, jurisdiction, as an ordinary court, of suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him."

Our present bankruptcy act, being a system of law enacted for the purpose of establishing a uniform system for the adjustment of insolvent estates throughout the Union, is not only to be construed in the light of other bankruptcy acts heretofore enacted in this country, but is to be construed with such liberality as will make the system effective in the collection, preservation, and distribution of estates. If, therefore, we may interpret this act with the purposes in view which we believe courts have held to be its purposes, we find that unless the creditors or the bankrupt or some other interested party may go into a court of like jurisdiction beyond the territorial limits of the court having the administration of the estate, for the purpose, pending adjudication (for we have seen no one can bring a plenary suit until a trustee is elected and no summary proceedings can be commenced for the collection of the assets of the bankrupt), of collecting or preserving the assets for distribution to the creditors in the district having jurisdiction of the estate, we shall find the assets scattered into innocent hands by bona fide sales upon judicial process at great sacrifice, stolen, depreciated in value by reason of neglect, or destroyed, so that, when finally one has arisen with power to take possession of them, their value will have departed, and little will be left for those interested in the estate. And all this, although the statute says that the title to the assets passes out of the bankrupt to the trustee from the commencement of the proceedings wherever they may be situated.

Does not a bankrupt act so interpreted as to result in such failure destroy the beneficent system by which the honest debtor may turn over to his creditors all that he has with the expectation that it will be so conserved and preserved that his just creditors will have the benefit of it? Is the act regulating this system to be so interpreted that, while it only allows the court of the domicile to take into its grasp assets within its territorial boundary, and forbids it to enter by its accredited officer another co-ordinate court, it will also stay the arm of every other court beyond its territorial boundary from aiding or assisting it in doing that for which the law was enacted? Rightly interpreted, we believe the true doctrine is that this is an effective national system of administering insolvent estates, giving to the court of the domicile full power to administer the estate, and giving to other courts of like jurisdiction beyond the boundary of the primary court full authority to aid by its decrees and processes that primary court, so that all the assets of the bankrupt may be at last brought into the primary court for distribution. We believe the authority of the District Courts of sister jurisdictions is auxiliary and ancillary for

the purpose of making the act effective. Many cases might be cited showing the ancillary powers in sister courts outside of those pertaining to bankruptcy.

We believe the authority rests in this court to aid the District Court for the Southern district of New York in its administration of the bankrupts' estate by appointing an ancillary receiver who shall take the assets and preserve them until there shall be an adjudication and appointment of a trustee. Let an order be drawn accordingly.